## UNITED STATES CIRCUIT COURT.

The Norwalk Bank agt. Adams Express Company.

Where an *express company*, as a common carrier, took from a person a *promissory note*, to be transmitted to a *bank* for discount, with directions to bring back the proceeds to him, accompanied by a letter from such person to the cashier of the bank to return the proceeds of the note to him by the express company, the company, on delivery of such proceeds to such person, *held, not liable*, although it turned out that the recipient of the proceeds stole the note, and falsely represented himself as the maker and owner of it.

There was no promise or duty that could be raised, either express or implied, that the express company would deliver the proceeds of the note to the genuine person, the real maker of the note, who it appeared was a stranger to the company, and had no connection with the transaction.

Besides, it appeared that the person who procured such note to be discounted, and the proceeds to be thus returned to him, had, before sending the note, *altered it*, whereby it became a *forged* note, and not obligatory at all upon the real maker; *held*, that it would be an alarming and dangerous doctrine to lay down that a common carrier is responsible for the conveyance of *forged paper*.

*Before* Nelson, *Circuit Judge, and* Shipman, *District Judge, at Connecticut, September,* 1860—*Jury trial.*

Henry Dutton *and* Mr. Carter, *for plaintiffs.*

Ralph J. Ingersoll, Clarence A. Seward *and* Samuel Blatchford, *for defendant.*

In December, 1859, F. A. Williams, of the city of New York, sent a note, at three months, for $3,000 to the Norwalk Bank, at Norwalk, Conn., to be discounted. The cashier returned the note to Williams through the mail, with a letter stating that the note had too long to run, and that if he would make it a two months' note the bank would discount it. That letter was advertised by the post office in New York. One J. S. Williams called for the letter, and obtained it. Acting upon the suggestion of the cashier, he altered the note to a two months' note, and then took it to the Adams Express Company in New York, and representing himself to be F. A. Williams, gave the note to the company to be transmitted to the Bank of Norwalk,

and directed the company to bring back the proceeds to him. He also wrote a letter to the cashier, requesting him to return the proceeds by the express company, and signed the letter " F. A. Williams." That letter he gave to the express company, who forwarded it to the bank with the note. The bank discounted the note, and gave to the express company its proceeds (less $1.50 express charges), amounting to $2,971, in a package addressed " F. A. Williams, New York city." The bank took from the company a receipt for the money, and paid the company $1.50 out of the proceeds of the note for express charges. The money was returned to New York, and there delivered by the company to J. S. Williams. On the discovery of the fraud the bank brought an action against the express company, in a state court in Connecticut, to recover the money. The action was removed by the company into the federal court.

The bank claimed that by the receipt of the $1.50, and by the giving of the receipt for the money, the express company had undertaken to deliver the money to F. A. Williams, to whom the package containing the money was directed. It also claimed that the officers of the bank did not observe the letter accompanying the note, and that the express company was guilty of negligence in not discovering the fraud, and that it was an insurer of the genuineness of the paper which it carried for collection, and that the bank had acted upon the faith of the directions given by the express company to the bank, to transmit the money for the note through it to New York. The cause came on to be tried before Judges NELSON and SHIPMAN, and a jury, at Hartford. After the evidence was in, the court requested the counsel for the plaintiffs to state the legal grounds upon which they relied to recover. After argument, NELSON, C. J., stated that the court were of opinion that the question involved in the case was wholly a question of law, as there was no dispute as to the facts, and he proceeded to deliver the opinion of the court, substantially as follows :

"It is agreed, at least the facts warrant the conclusion, that both these parties, both the bank and the carrier, are innocent parties, so far as regards this transaction; equally innocent, perhaps. And the question is, which of the two innocent parties must suffer the loss. This will depend upon the application of some dry rule of law to the admitted facts of the case.

" Now, the obligation that is charged upon the carrier by the bank is this, that he received the proceeds of the note and undertook to deliver them to F. A. Williams, the maker of the original note, the genuine F. A. Williams. This is the undertaking set out and charged upon the carrier, and it is the breach of that duty or undertaking upon which is founded the claim to recover the loss. The ground of the action against the carrier is the breach of duty in not delivering the proceeds of the note to the genuine F. A. Williams, according to the undertaking; that the carrier violated his duty in delivering to the fictitious F. A. Williams, instead of the genuine F. A. Williams.

" It appears that the carrier had no knowledge of the F. A. Williams, who was the maker of the original note, and had no knowledge that he was in any way connected with the transaction, and had no knowledge that there were any transactions existing between him and the bank. So far as it respects the carrier, as connected with the transaction, F. A. Williams, the original maker of the note, was a perfect stranger. The note was delivered to the carrier by a person representing himself by the name of F. A. Williams. He was in possession of the note, and when he delivered it to the carrier, representing himself to be F. A. Williams, he at the same time wrote a letter directed to the cashier of the bank, subscribing his name, "F. A. Williams," to it. This note and this letter he delivered to the carrier for the purpose of conveyance to the bank, with the view to the note's being discounted, and with directions to bring back the proceeds, provided the

note was discounted. The note was received by the carrier in the usual way, and the only connection that the carrier had with the transaction was as a carrier of the package. The package, containing the note and the letter, was delivered to the bank. The bank received it, and upon the faith of the note, discounted it and delivered the proceeds, according to the direction, to the carrier, to be remitted back to the person who employed the carrier.

"Now how, upon this state of facts, can a duty or an undertaking be predicated on the part of the carrier to deliver these proceeds to F. A. Williams, the original maker of the note, a stranger to the company, of whom they had no knowledge, and for whom they had transacted no business. He was not their employer in the transmission of the package to the bank. We are unable to see how, upon this state of facts, a promise or a duty can be raised, either express or implied, that they would deliver these proceeds to a stranger whom they never knew, and who had no connection with the transaction.

"It seems to us, that upon the facts as they appear, the note being delivered to the carrier, accompanied by a letter, by a person representing himself to be F. A. Williams, to be carried to the bank by the carrier, and delivered there, the whole employment being performed according to the undertaking, the bank receiving the paper signed by the man representing himself to be F. A. Williams, discounting it, and returning the proceeds to the company; it seems to us that, upon that state of facts, the only implied undertaking on the part of the carrier, would be an undertaking to deliver the proceeds to the person who employed the carrier.

"The company must have naturally supposed and believed that the bank and this person who delivered this note to them understood each other. The bank having discounted the note and sent back the proceeds according to the directions, the carrier must have supposed that it was a fair and

ordinary transaction, and one in which the bank and this person understood each other. Therefore, the duty raised by implication was to deliver the proceeds to the person who had sent the note to the bank, and who had procured the discount of the note.

"As respects this letter, if it is of any importance at all, it seems to us that the most material fact is, that the carrier performed his whole duty in regard to it. The letter was delivered to the bank. Their omission to notice it, whether from neglect or carelessness or misfortune, is certainly not to be charged upon a carrier who has performed his whole duty with respect to it. If, therefore, it is a material fact to influence the court in their judgment, we are bound to assume that the bank had full knowledge of the letter accompanying the note; and with respect to the indorsement upon the back of the package delivered to the bank, without regard to the purpose for which it was put on, it was the authority that the proceeds should be delivered to the express company. The letter directing that the proceeds should be returned by the carrier was the authority from the person who wrote the letter.

" We are of opinion, therefore, that on the facts of the case, looked at simply with reference to the application of the rule of law that should determine the rights of the parties, no duty or promise can be raised or implied on the part of the carrier to deliver the proceeds to F. A. Williams, the original maker of the note, the genuine F. A. Williams; but that, on the contrary, the only duty or promise that can be raised upon these facts against the carrier, was to deliver the proceeds to the person who employed the carrier.

"But there is another view of this case, which is independent of the view we have taken, and that is this: after the alteration of the note by the pretended F. A. Williams, it was no longer the note of the genuine F. A. Williams. It was a forged note. F. A. Williams was not under any obligation by virtue of his signature to that note. As it

respected him, it was the same as a note entirely fabricated, for three thousand dollars, payable in two months. It was, therefore, a forged note, delivered by the guilty party to the carrier, to be conveyed by it, as carrier, to the bank for the purpose of discount. That note was taken to and received by the bank, and on the faith of itself was discounted, and the proceeds were returned. Now, is the carrier responsible for the conveyance of forged papers? Is the carrier an insurer of the genuineness of all papers that are put into his hands for the purpose of transmission or conveyance? We think not. This would be an alarming doctrine to lay down, as it respects the common carrier. This business, carried on through the medium of express companies, has become a very extensive business. The common carrier is only a mode of communicating with banks, transmitting notes for discount, and carrying back their proceeds. The carrier has no earthly interest in such transaction, but as a mere vehicle of conveyance; is not connected at all with the party procuring the discount, or with the bank; does not influence the bank to discount the paper, and makes no representations in that regard; and the bank knows that the carrier has no other connection with the paper than as a mere vehicle of conveyance. It would be a very strange doctrine to hold that, under such circumstances, the carrier should be responsible to the bank for the genuineness of the paper; that the mere carrying of it, the mere conveyance of it from the party employing the carrier to the bank, should operate as a guarantee of the genuineness of all the paper put into the hands of the carrier for conveyance. That principle cannot be sustained. Now, that is this case. The note here was as much a forged note as if it had been fabricated throughout. There was no obligation on the part of F. A. Williams, the original and genuine maker of it, under the alteration. It must be regarded, therefore, as forged.

" We are quite clear that the case has not been made out on the part of the plaintiffs, and that the defendant, is entitled to a verdict."

The jury found a verdict for the defendant.